# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ANTHONY LEON LATIMER,  \*
a/k/a Gerrald Smith, SID #1956719
\*
Plaintiff
\*
v   Civil Action No. PX-18-2243
\*
BEN JONES, *et al.*,
\*
Defendants

\*\*\*

## MEMORANDUM OPINION

Plaintiff Anthony Leon Latimer has filed a civil rights Complaint alleging that a law enforcement officer, prosecutor, and judge involved in his state criminal proceedings violated his constitutional rights by failing to grant Latimer immunity under Maryland's Good Samaritan Statute. ECF No. 1 at 2-5. Defendants Dwyer and Hansen have moved to dismiss the Complaint, ECF No. 21, and Defendant Jones has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 33. Latimer has responded to both motions, ECF Nos. 34, 38, and has separately moved for appointment of counsel and for summary judgment in his favor. ECF Nos. 39, 40. The Court has reviewed the pleadings and finds no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, Dwyer and Hansen's Motion to Dismiss is granted; Jones' Motion, construed as a Motion for Summary Judgment, is granted; and Plaintiff's motions are denied.

**I.  Background**

On the evening of April 11, 2016, Latimer was locked out of his house that he shared with his then girlfriend ("Jane Doe" or "Doe"). Latimer tried to reach Doe by phone but received no response. ECF No. 1 at 1; ECF No. 38 at 1. Latimer then called 911 for assistance. Deputies

Peyton and Angelini of the Washington County Sheriff's Department responded in person to the residence. ECF No. 1 at 1; ECF No. 33-6. The deputies told Latimer that they could not force entry into the home because the deputies had no basis to justify the intrusion. ECF No. 1 at 1; ECF No. 33-6 at 1. Latimer and the deputies found an unlocked window through which Latimer climbed into the home and then opened the front door, as instructed. ECF No. 1 at 2; ECF No. 33-6 at 1. After entering the apartment, Latimer "observed his girlfriend deceased from an apparent overdose." ECF No. 1 at 2.[2]

The Complaint provides few details about what happened next. Latimer contends that he was ultimately arrested for "contraband later found on his late girlfriend's person and effects" and was held without bail for nine months as the result of a fraudulently obtained search warrant. *Id.* The Complaint avers that Detective Jones supposedly falsified two controlled purchases and fabricated an investigation against Latimer in the affidavit to obtain the search warrant. *Id.*

The record evidence submitted by Jones reflects the following series of events. After arriving at the scene, Officer Peyton first "scanned the room for evidence of the cause of death," but did not find anything of evidentiary value. ECF No. 33-6 at 2. Peyton continued to search the bedroom where he found in plain view "a twisted corner of a clear sandwich baggie on the nightstand that contained a thumb-size portion of a white substance" consistent with cocaine or heroin. *Id.* Peyton then asked for a detective to respond to the scene. Sergeant Howard assumed responsibility for the investigation. *Id.*; ECF No. 33-7.

Howard found an empty cellophane wrapper and credit card, both with white powder residue, near Doe's body, leading him to believe that Doe had overdosed. Howard contacted the Washington County Narcotics Task Force and Officer Shifflett responded to the scene. ECF No.

---

[2] Throughout this opinion, the Court has modified some of the original capitalization when quoting from Plaintiff's filings.

2

33-7 at 2. In the interim, an investigator for the Office of the Medical Examiner discovered "two large plastic bags containing a whitish powdery substance in the pocket of the sweat shirt that [Doe] was wearing." *Id.*

Based on the evidence gathered, Shifflett obtained permission from the State's Attorney's office to seek a search warrant for the entire residence. Shifflett and Howard secured the residence while Jones took next steps regarding the warrant. Id.; *see also* ECF No. 33-3. Specifically, Jones summarized the evidence in a probable cause affidavit supporting the search warrant. The affidavit stated that Jones "avers that based upon ~~the two (2) above described controlled purchases as well as other~~ investigation by your Affiant that there is probable cause to believe that" drugs and related evidence were being concealed at Doe and Plaintiff's apartment. ECF No. 33-3 at 7 (strike-through in original). Next to the stricken portion of the affidavit, Jones placed his initials and badge number. *Id.* Jones attests that he presented the warrant application to the Honorable M. Kenneth Long, Jr. of the Circuit Court for Washington County at his residence at 2:42 a.m. on April 12, 2016. ECF No. 33-2 at 2. It was Judge Long who noted the erroneous reference to two purchases and other investigation in the affidavit and instructed Jones to strike through the reference which had been included in "inadvertent error." Judge Long then authorized the warrant. ECF No. 33-2 at 3 (internal citations omitted).

During the execution of the search warrant, officers recovered a larger quantity of controlled substances in a Louis Vuitton travel bag located in the master bedroom's closet. ECF No. 33-4; ECF No. 33-5; ECF No. 33-6 at 2, 4. Also located in the master bedroom were a dozen cell phones, a digital scale, and a cutting agent. Latimer was arrested and charged with four counts of possession with intent to distribute controlled substances, four counts of simple possession of controlled substances, and one count of possession of drug paraphernalia. ECF No. 38-2 at 3-4.

3

Latimer was detained pending trial. On September 15, 2016, the presiding Judge (not Judge Dwyer) dismissed the simple possession and paraphernalia charges (Counts 5 through 9 of the Indictment) pursuant to section § 1-210 of the Maryland Code of Criminal Procedure, known as the "Good Samaritan Statute." Id. at 5-6. The Court denied dismissal of the remaining counts and the matter was set for trial. Id. at 6.

On December 15, 2016, a jury trial was held on the remaining four charges over which Judge Dwyer presided. Defendant Hansen, an Assistant State's Attorney, prosecuted the case. Ultimately, the jury acquitted Latimer of all charges. Id.

On July 19, 2018, Latimer filed suit in this Court against Jones, Hansen, and Dwyer, alleging that because he was immune from criminal prosecution under the Good Samaritan Statute, the Defendants collectively violated his Fifth Amendment Due Process rights by trying him criminally. Latimer avers that Jones lied about two controlled substance purchases to obtain the warrant and did so knowing that Latimer was immune from prosecution. Id. at 2-3. Latimer does not dispute that Jones had stricken the reference to "purchases," but nonetheless maintains that the stricken language renders the warrant "fraudulently obtained" and evinces "malicious and sadistic intent." ECF No. 1 at 3; ECF No. 38 at 2-3.

## II. Standard of Review

Reviewing a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). To survive dismissal, the plaintiff must do more than aver bare legal "conclusions, and a formulaic recitation of the elements of a cause of action."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and brackets omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Although pro se pleadings are construed liberally to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), a court cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

The Court may alternatively convert a motion to dismiss into one for summary judgment when considering evidence outside the four corners of the Complaint. Fed. R. Civ. P. 12(d). Before doing so, the nonmoving party must be given "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Where the nonmoving party opposes the Court's treating the motion as one for summary judgment, the party must submit by declaration the "specified reasons" for needing additional factual development or otherwise put the district court on notice of the reasons why summary judgment is premature. *See* Fed. R. Civ. P. 56(d). *See also Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs.*, LLC, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). However,

5

the Court may reach the merits of summary judgment "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

Latimer has submitted an affidavit, but it is insufficient to preclude treating Jones' motion as one for summary judgment. Latimer states in conclusory fashion that "all discovery, and transcripts will support the complaint, and favorable [sic] to the Plaintiff." ECF No. 40-1. Latimer has not proffered what additional evidence would be pertinent to the resolution of Defendants' motions or necessitate formal discovery. The Court, therefore, will construe Jones' motion as one for summary judgment.

Summary judgment is proper when, viewing the evidence most favorably to the non-moving party, no genuine issue of any material fact exists, thus entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party bears the burden of generating sufficient evidence to demonstrate the existence of a genuinely disputed material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### III. Discussion

#### A. The Good Samaritan Statute

Before turning to the Defendants' motions, the Court first addresses the scope of the Good

Samaritan Statute and how it was applied in Latimer's criminal case. The statute states in relevant part:

**In general**

(a) The act of seeking, providing, or assisting with the provision of medical assistance for another person who is experiencing a medical emergency after ingesting or using alcohol or drugs may be used as a mitigating factor in a criminal prosecution of:

    (1) the person who experienced the medical emergency; or
    (2) any person who sought, provided, or assisted in the provision of medical assistance.

**Persons seeking, providing, or assisting with provision of medical assistance**

(b) A person who, in good faith, seeks, provides, or assists with the provision of medical assistance for a person reasonably believed to be experiencing a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal arrest, charge, or prosecution **for a violation of § 5-601, § 5-619, § 5-620, § 10-114, § 10-116, or § 10-117** of the Criminal Law Article if the evidence for the criminal arrest, charge, or prosecution was obtained solely as a result of the person's seeking, providing, or assisting with the provision of medical assistance.

Md. Code Ann., Crim. Pro. § 1-210 (emphasis added). Thus, under the statute, the accused is immune from criminal prosecution only for certain offenses and under certain conditions. *Id*. As to non-specified offenses, seeking assistance for a victim of apparent overdose "may be used as a mitigating factor," but does not trigger immunity from prosecution. *Id.* § 1-210(a).

Latimer was charged with possession with intent to distribute controlled substances in violation of Maryland Criminal Law Article § 5-602 (Counts One through Four); simple possession of various controlled substances in violation of § 5-601 (Counts Five through Eight); and possession of drug paraphernalia in violation of § 5-619 (Count Nine). ECF No. 38-2 at 3-4. Under the plain language of the Good Samaritan Statute, Latimer successfully obtained dismissal as to the possession and paraphernalia counts. However, for violations of § 5-602, possession with intent to distribute, the Good Samaritan Law simply does not confer immunity from prosecution.

7

As the Maryland Court of Special Appeals has reasoned:

> The crime of possession with intent to distribute a controlled, dangerous substance is distinct from simple possession and from possession of paraphernalia. By its nature, distribution involves the transfer of potentially dangerous substances to others, i.e. to those not experiencing or reporting a medical emergency. It is easy to see why the General Assembly did not include possession with intent to distribute in C.P. § 1–210's list of immunized provisions—the proliferation of drug abuse and addiction through substance distribution cuts against the purpose of the statute—to save lives.

*Shuey v. State*, Case No. 0117, Sept. Term 2015, 2016 WL 3613391, at *6 (Md. Ct. Spec. App. July 6, 2016) (footnote omitted). Accordingly, Latimer was not entitled to immunity on the counts for which he was tried.

**B.     Judicial Immunity as to Judge Dwyer**

Latimer seeks civil redress against the judge who presided over Latimer's criminal trial. Dwyer is immune from suit for any decisions made in his capacity as a judge. *See Forrester v. White*, 484 U.S. 219, 226-27 (1988). The doctrine of judicial immunity reaches claims brought against a judge for acts undertaken in his official or individual capacity. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam). Judicial immunity applies even where a judge has committed "'grave procedural errors.'" *Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 359 (1978)). Importantly, "[t]his immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967).

As the singular basis for liability against Judge Dwyer, Latimer complains of Dwyer's supposed misapplication of the Good Samaritan Statute. This is precisely the kind of judicial decision for which the court must be immune from suit. Accordingly, viewing the facts most

favorably to Latimer, all claims against Dwyer must fail.

**C.      Prosecutorial or "Quasi-Judicial" Immunity as to Hansen**

Similarly, Hansen, as the Assistant State Attorney responsible for prosecuting Latimer, cannot now be sued for having tried Latimer for drug offenses. Prosecutors enjoy absolute immunity when performing prosecutorial functions, as opposed to investigative or administrative ones. *See Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976); *see also Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018); *Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997). Because this immunity is designed to protect the integrity of court proceedings, the Court must determine whether the complained-of conduct is closely associated with judicial process. *See Burns v. Reed*, 500 U.S. 478, 479 (1991). Adopting a "functional approach," the Court must determine whether a particular act is "'intimately associated with the judicial phase.'" *Nero*, 890 F.3d at 118 (quoting *Imbler*, 424 U.S. at 430). For example, "[a] prosecutor acts as an advocate when she professionally evaluates evidence assembled by the police, decides to seek an arrest warrant, prepares and files charging documents, participates in a probable cause hearing, and presents evidence at trial." *Nero*, 890 F.3d at 118 (internal citations omitted).

Again, taking all facts in the light most favorable to Latimer, Hansen has been sued solely in connection with her role as the prosecutor who tried Latimer's criminal case. Indeed, Latimer's Due Process claim focuses squarely on Hansen's decision to prosecute criminal offenses for which Latimer (wrongly) believes the Good Samaritan statute prohibits. Because Hansen enjoys absolute immunity for prosecuting Latimer for certain crimes, the claims are dismissed as to her.

**D.      Claims against Jones**

Latimer principally accuses Jones of denying him Due Process by falsifying evidence to

9

obtain a search warrant.[4] To sustain this claim, Latimer must demonstrate that Jones (1) "knowingly and intentionally or with a reckless disregard for the truth either made false statements in their affidavits or omitted facts from those affidavits, thus rendering the affidavits misleading," and (2) that such false statements or omissions "are material, that is, necessary to a neutral and disinterested magistrate's authorization of the search." *Evans v. Chambers*, 703 F.3d 636, 650 (4th Cir. 2012) (internal quotation marks, citations, and brackets omitted). Whether such false statements are material requires the Court to "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause. If the corrected warrant affidavit establishes probable cause, no civil liability lies against the officer." *Miller v. Prince George's Cty., Md.*, 475 F.3d 621, 628 (4th Cir. 2007) (internal quotation marks, citations, and brackets omitted); *see also United States v. Karo*, 468 U.S. 705, 719 (1984) (noting in context of criminal prosecution that "if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid.").

In averring that Jones "lied to obtain a search warrant," Latimer concentrates on the stricken through portion of the affidavit in support of the warrant. See ECF No. 33-3 at 7 (Jones "avers that based upon the two (2) above described controlled purchases as well as other investigation…"). Latimer also agrees, however, that the judge who reviewed the affidavit caught the error and only authorized the warrant after ordering Jones to excise the offending portion. ECF No. 33-2 at 3. Consequently, the undisputed evidence, viewed most favorably to Jones, demonstrates that the "lies" of which Latimer complains were *not* part of the probable cause

---

4   Although Latimer characterizes his claim against Jones as a Due Process violation, it is more accurately described as a violation of his Fourth Amendment rights to be free from warrantless searches. This distinction, however, does not change the analysis.

determination supporting the issuance of the warrant. Thus, summary is granted in Jones' favor on this claim.

Latimer alternatively argues that his Due Process claim survives challenge because Jones wrongfully "initiated a criminal investigation against Plaintiff that was prohibited by" the Good Samaritan Statute. ECF No. 1 at 2. This claim, too, fails as a matter of law because the Good Samaritan Statute does not confer immunity as Latimer suggests. Nor does the statute concern investigations but rather covers only "criminal arrest, charge, or prosecution" for those enumerated offenses not relevant in this case. Md. Code Ann., Crim. Pro. § 1-210(b). Accordingly, Jones is entitled to judgment as a matter of law as to all claims against him.

## IV. Conclusion

Dwyer and Hansen are entitled to judicial and prosecutorial immunity respectively, compelling dismissal of all claims as to them. Likewise, when viewing the evidence most favorably to Latimer, Jones is entitled to summary judgment in his favor. Latimer's Motions for Appointment of Counsel and Summary Judgment are denied.

A separate order follows.

/S/
_____
Paula Xinis
United States District Judge